IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASSET GUARD PRODUCTS INC. dba FALCON TECHNOLOGIES AND SERVICES, INC., | § § § § | |
| Plaintiff, VS. | § § § | CIVIL ACTION NO. 4:17-CV-971 |
| SENTINEL CONTAINMENT, INC., | § § § | |
| Defendant. | § § | |

## Memorandum and Order on Claim Construction

This patent case is before the Court for construction of the disputed claim terms in the United States Patent No. 9,410,302 ("the '302 Patent"). Plaintiff Asset Guard Inc. d/b/a Falcon Technologies & Services, Inc. ("Falcon" or "Plaintiff") and Defendant Sentinel Manufacturing, Inc. ("Sentinel" or "Defendant") agree that any construction of the disputed claim terms will apply consistently to the Patent-in-Suit.

The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("*Markman* hearing"), during which the parties presented evidence and argument regarding the proper construction of disputed claim terms. The parties also provided evidence and argument regarding whether the preambles to claims 1, 15, and 24 are limiting. Based on the evidence before the Court, the arguments presented by counsel, and the governing legal authorities, the Court issues this Memorandum and Order construing the claim terms "encapsulated/encapsulating," "seam," "interlocking," and "dimension."

## I. Background

Falcon is the owner of the Patent-in-Suit by assignment. The Patent-in-Suit relates to the construction of an improved tank base. The Patent-in-Suit explains that it is common for water to

be produced during the production of oil and gas. This water is separated from the oil or gas and is ordinarily stored in an above-ground storage tank. The tank base claimed in the patent provides protection against spills and leaks associated with wear-and-tear on tanks caused by the high concentrations of impurities in the produced water.

**II. General Legal Standards for Claim Construction**

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). The patent claims in issue must be construed as a matter of law to determine their scope and meaning. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), aff'g, 52 F.3d 967, 976 (Fed. Cir.) (en banc); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007).

"There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis*, 715 F.3d at 1373 (citing *Phillips*, 415 F.3d at 1312-13; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Therefore, courts must "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted); *see also Summit 6, LLC v. Samsung Elec. Co., Ltd.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313; *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in

which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313; *ICU*, 558 F.3d at 1374.

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Because the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317.

### III. Construction of Disputed Terms

This Court has carefully reviewed the Patent-in-Suit, specifically the claims and specifications. The Court has also considered each counsel's arguments presented in the claim construction briefing and at the *Markman* hearing. The Court has also reviewed and hereby applies

the governing Federal Circuit authority. With this background, the Court construes the claim terms "encapsulated/encapsulating," "seam," "interlocking," and "dimension" as used in the Patent-in-Suit.

### A. "Encapsulated/Encapsulating"

The term "encapsulated/encapsulating" is used in asserted claims in the '302 Patent. Falcon argues that the term should be construed to mean "partially or fully coating a substrate for protection and/or strength." Sentinel argues that the term should be construed to mean "completely coated/coating on all surfaces with a continuous layer."

The Court has considered the evidence and argument presented in the parties' briefing and at the *Markman* hearing, particularly the evidence from the prosecution history. "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself. . . and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The prosecution history shows that the patentee changed the term "coated" to "encapsulated" to distinguish from the prior art but refused to define the "degree" of encapsulation. [Doc. No. 21, Ex. 3 at 7]. The patent history also shows that the purpose of coating or encapsulating the polystyrene at a high rate was to protect it from contaminants and to keep it from failing under the weight of the tank. [Doc. Nos. 1, Ex. 2 4:40-45; 21 Ex. 3 at 13]. Based on its consideration of all evidence and arguments presented by the parties, the Court construes the term "encapsulated/encapsulating" to mean "coated on all surfaces."

### B. "Seam"

The term "seam" is used in asserted claims in the '302 Patent. Falcon argues that the term should be construed to mean "an interface between the edges of two substrates when mated together." Sentinel argues that the term should be construed to mean "gap between two

4

encapsulated substrates that are fitted or joined together along their edges."

The parties dispute the use of the term "gap." Specifically, Falcon contends that "gap" implies a larger space than required by the patent. Prior to the *Markman* hearing, the parties disputed the phrase "joined together"; however, during the hearing, the parties agreed that "joined together" erroneously implied that the substrates are "adhesively attached," whereas "fitted" or "mated" more accurately described the substrates' placement. Based on this agreement between the parties, the evidence and argument presented at the *Markman* hearing, and the parties' claim construction briefs, the Court construes the term "seam" to mean "the space between two substrates when fitted or mated together."

### C. "Interlocking"

The term "interlocking" is used in asserted claims in the '302 Patent. Falcon argues that the term should be construed to mean "a seam design that allows substrates to piece or hold together." Sentinel argues that the term should be construed to mean "united or joined closely, such as by hooking or dovetailing."

Falcon points to Figure 6 in the '302 patent which provides an example of interlocking substrates. [Doc. No. 1, Ex. 2 at 5]. Figure 6 shows three substrates placed side by side and connected with a tongue and groove type pattern. At the *Markman* hearing, Falcon provided a demonstrative as another example; in this example, the connecting sides of the substrates fit together like puzzle pieces. The specification of the '302 Patent states that "[t]he substrates are positioned adjacent to one another and bound together with a fastening system." Using the '302 Patent specification and the illustrations provided therein, the Court finds that Sentinel's examples "hooking" and "dovetailing" unnecessarily narrow the term "interlocking." The Court construes the term "interlocking" to mean "a seam design that allows substrates to piece together."

5

### D. "Dimension"

The term "dimension" is used in asserted claims in the '302 Patent. Falcon argues that the term requires no construction. Sentinel argues that the term requires construction and should be construed to mean "a measure of the length or width of one of the [encapsulated substrates/parts]." Sentinel argues that circumference is not included within the scope of the term "dimension" because the claims describe a dimension that is "perpendicular to each of the respective first and second thicknesses of the first and second parts." [Doc. No. 1, Ex. 2 at 11, 12]. The Court agrees that in claims 13, 15, and 24, the patent describes the dimension as perpendicular to the thickness, and that, accordingly, thickness must be excluded from the definition of "dimension." [Doc. No. 1, Ex. 2 at 11, 12]. However, the Court disagrees that dimension excludes circumference where, for example, claims 13, 15, and 24 also describe how the dimension of the substrates must be "sized to accommodate the outer circumference of the above-ground storage tank." *Id.* The Court construes "dimension" as "a measurement of size (excluding thickness)."

### IV. Construction of the Preamble

The parties also dispute whether the preambles of claims 1, 15, and 24 are limiting. Falcon contends that the preambles do not limit the claims. Sentinel argues that each preamble limits each claim because it provides required antecedent basis for key terms in the claims or because it gives necessary meaning to the claim bodies. [Doc. No. 22 at 22].

A preamble need only be construed if it limits the body of the claim. *See Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002). A preamble is limiting if it "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina*, 289 F.3d at 808 (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). Nevertheless, a preamble is not limiting "where a

patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997).

While there is no litmus test for defining when a preamble is limiting, the Federal Circuit has provided guideposts for determining the preamble's effect on claim scope. *See Catalina*, 289 F.3d at 808. These guideposts include whether the examiners relied on the preamble during prosecution to distinguish the claimed invention, whether the preamble is essential to understand limitations or terms in the claim body, whether the preamble recites additional structure or steps that are underscored as important by the specification, and whether the claim drafter chose to use the preamble and the body to define the subject matter of the claimed invention. *See Catalina*, 289 F.3d at 808.

Additionally, a preamble may limit a claim where the language provides an antecedent basis. *See Pacing Technologies, LLC v. Garmin Intern., Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015); *see also Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) ("When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."). Where terms are introduced with the articles "a" or "an" and then later used with "the" or "said," the latter term may refer to the former term. *See Eolas Technologies Inc. v. Amazon.com, Inc.*, No. 6:15-cv-01038, 2016 WL 7155294, *15 (E.D. Tex. Dec. 8, 2016) (declining to construe terms where there was no actual dispute as to the meaning). Nevertheless, "the mere fact that a . . . term in the preamble is part of the claim does not mean that the preamble's statement of purpose or other description is also part of the claim." *Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010). Preambles that merely describe the use of an invention generally do not limit the claims because

"the patentability of apparatus or composition claims depends on the claimed structure not on the purpose or use of that structure." *Catalina*, 289 F.3d at 809.

First, Sentinel argues that the preambles are limiting because they provide antecedent bases for claim requirements. Specifically, Sentinel argues that the language "a tank base," "a load-bearing support for," and "an above-ground storage tank" act as antecedent bases for the bodies of claims 1, 15, and 24, and that "an outer circumference" acts as antecedent basis for claims 15 and 24.

Here, the preamble language does not provide an antecedent basis because the language is not essential to understand limitations in the claim body. *See Catalina*, 289 F.3d at 808; *see also Pacing Technologies*, 778 F.3d at 1024 (holding that the term "user" provided an antecedent basis where it was "necessary to understand the positive limitations in the body of the claims."). The court in *Zimmer Surgical, Inc. v. Stryker Corporation* found that "the patient," which appeared in the claim body, did not rely on the reference to "a patient" in the preamble. *Zimmer Surgical, Inc. v. Stryker Corporation*, No. 1:16-cv-679, 2018 WL 3038515, *5 (Del. Jun. 19, 2018). The court distinguished the patentee's use of "patient" from the patentee's use of "user" in *Pacing Technologies*, and found that the preamble was not limiting; "[u]nlike the 'user' recited in the *Pacing* preamble, the 'patient' recited in this preamble is not 'necessary to understand' the later reference to 'the patient' in the claim body." 2018 WL 3038515 at *5; *Pacing Technologies*, 778 F.3d at 1024. Similarly, here the preamble language is not necessary to understand the later references to a "tank base," "a load-bearing support for," or "an above-ground storage tank." While Sentinel is correct that these terms are introduced with the articles "a" or "an" in the preamble, and later referred to as "the" in the body, this is not dispositive. These terms are not "essential to understand limitations or terms in the claim bod[ies]," because the body of each claim describes

8

"a structurally complete invention." *Catalina*, 289 F.3d at 808-09. In other words, "a load-bearing support for" and "an above-ground storage tank" describe the intended use of the tank base—to support the tank that is placed upon it. *See Catalina*, 289 F.3d at 809. Moreover, the Court has found no evidence that the examiners relied on this language to differentiate the '302 Patent from prior art. Accordingly, the Court does not find this language limiting.

Similarly, Sentinel argues that "an outer circumference" acts as an antecedent basis for claims 15 and 24. The Court again disagrees that the language acts as an antecedent basis. The bodies of claims 15 and 24 do not rely on the preamble language as an antecedent basis because the language is not "necessary to understand the later reference in the claim body." *Zimmer*, 2018 WL 3038515 at *5. Thus, this language does not provide an antecedent basis.

Next, Sentinel contends that the preamble language "an outer circumference" and "configured to allow moisture to pass" provides necessary meaning to the claims. Sentinel alleges that "an outer circumference" provides meaning to claim 1, requiring that the tank base be sized to provide support to the tank. The Court agrees. While the body of claim 1 describes the relationship between the weight of the above-ground storage tank and the size of the tank base, only the preamble explains that the circumference of the tank must also be taken into account when sizing the tank base. The Court finds that "an outer circumference" is a limitation on claim 1 because it acts as "an essential structure or step" that is absent from the body of the claim. *Catalina*, 289 F.3d at 808.

Since this preamble phrase is limiting, it must be construed. *See Catalina*, 289 F.3d at 808-09. The Court construes "an outer circumference" to have its plain meaning.

Finally, the Court disagrees that "configured to allow moisture to pass" provides necessary meaning. The language in the bodies of claims 1, 15, and 24 define this "essential" component

without reference to the preamble. *See Catalina*, 289 F.3d at 808. Claims 1 and 15 state "a first seam formed between the first and second encapsulated substrates to allow for moisture to pass between the first and second encapsulated substrates so that moisture is allowed to seep away from the bottom of the tank, via the first seam." Similarly, claim 24 reads "the first seam is formed between the encapsulated first and second substrates to allow for moisture to pass between the first and second encapsulated substrates." The preamble merely describes an asserted benefit of the tank base. Thus, the Court finds that this language is not limiting.

**V. Conclusion**

The Court has considered the evidence in the record. The Court also has considered the parties' oral arguments and explanations during the *Markman* hearing, which the Court found very helpful and informative. Based on this consideration of the evidence and the parties' arguments, as well as the application of governing claim construction principles, the Court construes the terms "encapsulated/encapsulating," "seam," "interlocking," and "dimension" as used in the Patent-in-Suit as set forth below:

| Disputed Claim Term/Language | Court's Construction |
|---|---|
| Encapsulated/Encapsulating | "coated on all surfaces." |
| Seam | "the space between two substrates when fitted or mated together." |
| Interlocking | "a seam design that allows substrates to piece or join together." |
| Dimension | "a measurement of size (excluding thickness)." |

| | |
|---|---|
| Preamble of Claim 1:<br>A tank base sized to provide a load-bearing support for an above-ground storage tank and configured to allow moisture to pass, the aboveground storage tank having a bottom and defining **an outer circumference**, the tank base comprising: | Preamble is limiting; "an outer circumference" is construed as having its plain and ordinary meaning |
| Preamble of Claim 15:<br>A tank base sized to provide a load-bearing support for an above-ground storage tank and configured to allow moisture to pass, the aboveground storage tank having a bottom and defining an outer circumference, the tank base comprising: | Not limiting; no construction necessary |
| Preamble of Claim 24:<br>A kit which, when assembled, forms a tank base sized to provide a load-bearing support for an above-ground storage tank and configured to allow moisture to pass, the above-ground storage tank defining an outer circumference, the kit comprising: | Not limiting; no construction necessary |

It is **SO ORDERED**.

SIGNED at Houston, Texas, this 29th day of November, 2018.

Andrew S. Hanen
United States District Judge